Samuel RAYMOND and Shirley
J. Raymond, Plaintiffs–
Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 92–5569.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1992.

Decided Jan. 13, 1993.

William T. Gamble, Wilson, Worley, Gamble & Ward, Kingsport, TN, Peter W. Mettler (argued and briefed), Mettler & Gilson, Palm Beach, FL, for plaintiffs-appellants.

Josh Eagle, U.S. Dept. of Justice, Tax Div., Gary R. Allen, Acting Chief (briefed), Teresa McLaughlin, Frank P. Cihlar, U.S. Dept. of Justice, Appellate Section Tax Div., Billie L. Crowe (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for U.S.

Before: GUY and RYAN, Circuit Judges; and CHURCHILL, Senior District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

Plaintiffs, Samuel and Shirley Raymond, appeal the dismissal of their 26 U.S.C. § 7433 action against the Internal Revenue Service. At issue is whether the IRS recklessly or intentionally disregarded the Internal Revenue Code or its regulations when the IRS, pursuant to its interpretation of § 6343(b) of the Code and Treasury regulation section 301.6343–1(b), returned money wrongfully levied upon to its rightful owner more than nine months after the date of the levy. The district court concluded that the statute in some circumstances authorizes such action, thereby finding that the IRS did not act with intentional or reckless disregard of the law. We affirm.

I.

After a federal income tax audit involving the years 1984 through 1987 revealed irregularities, Mr. Raymond pled guilty to tax evasion. Subsequently, he and his wife

---

[*] The Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation.

agreed to an assessment of federal income taxes, penalties, and interest totaling $820,408 for the years 1984 through 1987. Accordingly, the IRS filed federal tax liens encumbering the Raymonds' residence and other assets. Meanwhile, the Raymonds pled guilty to related state criminal charges.

As part of a plea agreement between the Raymonds and the State of Florida, the Raymonds transferred title to their home in Jupiter, Florida, to the JFK Medical Center. On February 5, 1990, this residence was sold by the Medical Center. On the same day, the IRS levied on the proceeds of the sale to satisfy the Raymonds' tax liabilities. As a result, the sale proceeds were remitted to the IRS and credited to the Raymonds' federal income tax liability account. On October 26, 1990, the Medical Center filed an administrative claim pursuant to § 6343(b) and Treasury regulation section 301.6343–1(b) for the return of the money levied. On March 12, 1991, the IRS returned $291,089.25, plus interest, to the Medical Center and increased the balance due on the Raymonds' account by that amount.

The Raymonds then filed an administrative claim for damages under § 7433 of the Code, seeking reapplication to their account of the $291,089.25, plus interest. Because the IRS returned the money to the Medical Center more than nine months after the date of the levy, the Raymonds contended that it violated § 6343(b). Their claim was denied, and they instituted this suit.

II.

Our *de novo* review of the district court's determination begins and ends by examining the applicable statute and regulations. Put simply, this is a case of statutory construction. The Raymonds read the applicable law as allowing the IRS to return property at any time, but money may only be returned at any time before the expiration of nine months from the date of the levy, and not at all thereafter. The government asserts that, if a request for the return of property, including money, is filed within nine months of the levy, the IRS may con-

tinue to entertain the request even after nine months have expired.

A third party, such as the Medical Center, whose property or interests in property have been seized wrongfully is entitled to claim that the property has been wrongfully levied upon and may apply for its return either through administrative channels, 26 U.S.C. § 6343(b), or through a civil action filed in a federal district court, 26 U.S.C. § 7426(a)(1). It is not necessary for an aggrieved third party to first exhaust administrative channels before instituting a wrongful levy suit. 26 U.S.C. § 7426(f). Unless an administrative claim under § 6343(b) is timely filed, however, a suit in federal district court must be initiated within nine months after the date of the levy. 26 U.S.C. § 6532(c)(1). If a third party does file an administrative claim, the limitations period for bringing a wrongful levy suit is extended for the shorter of (1) 12 months from the date of filing of the claim or (2) six months from the mailing of the notice of disallowance of the claim. 26 U.S.C. § 6532(c)(2).

As pertinent here, 26 U.S.C. § 6343(b) states:

(b) **Return of property.**—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from the sale of such property. Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy.

As a complement to the administrative claim procedure outlined in § 6343(b), Treasury regulations promulgated in 1972 authorize the IRS to return money under § 6343(b) "after a reasonable period of time subsequent to the expiration of the nine-month period if necessary for the investigation and processing" of a request

for the return of property, so long as the request is filed within nine months of the levy. 26 C.F.R. § 301.6343–1(b)(1) (1992). The regulation provides in relevant part as follows:

> If the United States is in possession of specific property, the property may be returned at any time. An amount equal to the amount of money levied upon or received from a sale of the property may be returned at any time before the expiration of 9 months from the date of the levy. When a request described in subparagraph (2) of this paragraph is filed for the return of property before the expiration of 9 months from the date of levy,[1] an amount of money may be returned after a reasonable period if necessary for the investigation and processing of such request. In cases where money is specifically identifiable, as in the case of a coin collection which may be worth substantially more than its face value, the money will be treated as specific property and, whenever possible, this specific property will be returned.

The Raymonds find no basis in the statute for returning money to the Medical Center more than nine months after the levy. Thus, they allege that the IRS recklessly or intentionally disregarded its own provisions and regulations. Both sides admit that the Medical Center properly filed an administrative claim for the disputed money within nine months, as implicitly required by § 6343(b) and the accompanying Treasury regulations. The dispute concentrates solely on the propriety of returning money some 13 months after a levy.

We note at the outset that neither the applicable statute nor the accompanying Treasury regulations explicitly mandate that a potential claimant must file an administrative claim within nine months of a levy or be time barred. However, the IRS consistently has maintained that position, and the courts that have considered the issue have concluded that it is implicit in the structure of the applicable sections that an administrative request must be filed within nine months of the levy. *See State Bank of Fraser v. United States,* 861 F.2d 954, 965–67 (6th Cir.1988) (bank's written request for return of money time barred when more than nine months elapsed between notice of levy and administrative claim); *see also Winebrenner v. United States,* 924 F.2d 851 (9th Cir.1991) (same); *American Honda Motor Co. v. United States,* 363 F.Supp. 988, 993 (S.D.N.Y.1973) (same).

A plain reading of § 6343 itself does not answer whether and to what extent the IRS can return wrongfully levied upon money to claimants such as the Medical Center. The statute provides that "[a]n amount equal to the amount of money levied upon or received [from the sale of such property] may be returned at any time before the expiration of 9 months from the date of such levy." The Raymonds seize on this language as clearly providing for only a nine-month period in which the IRS can return improperly levied money. However, the statute uses the discretionary verb "may" rather than the mandatory verb "must" in describing the IRS' obligations.[2]

The Raymonds' argument also fails to read § 6343(b) in conjunction with

---

1. Section 301.6343–1(b)(2) of the Treasury regulations, captioned "Request for return of property," sets forth the necessary contents of an administrative claim for the return of property. When the request supplies the information requested in the regulation, § 6532(c)(2) governs the time for filing a wrongful levy suit.

2. The Raymonds repeatedly cite a tax volume's explanation of § 6343(b) to support their position that money must be returned within nine months of a levy. *See Federal Income Tax Reporter* (CCH) 65,591 (1992) ("Specific property may be returned at any time. Money wrongfully seized or the proceeds received from the sale

of the seized property *must* be returned within nine months after the levy.") (emphasis added). However, the tax reporter never explains the variance between its use of the mandatory verb "must" in its interpretation of the statute and use of the permissive verb "may" in both the statute and the accompanying regulations. In addition, the tax volume does not explain or mention the section of the Treasury regulations at the crux of this dispute which allow a reasonable period subsequent to the expiration of nine months for investigation of allegedly improper levies.

§ 6532(c)(2), which extends the time for instituting a lawsuit beyond nine months if the aggrieved party has made an administrative claim. The government contends that the reason for extending the limitations period in cases where an administrative claim is filed is to give the Secretary ample opportunity to consider such a request on the merits before the matter comes before the courts. We find this reasoning persuasive, as it provides a coherent reading of the entire statutory scheme for administering claims. *See Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) (examining the provisions of the "whole law" rather than a single sentence). Moreover, we have on at least one occasion presumed that the IRS may take a reasonable amount of time after nine months have elapsed to investigate claims of improper levies. In *State Bank of Fraser*, a bank made a formal administrative claim for return of funds received by the IRS from a taxpayer's various accounts receivable debtors. 861 F.2d at 957. The bank contended that its security interest in the taxpayer's accounts receivable took priority over the IRS' tax lien and subsequent levy of those funds. *Id.* The IRS received funds throughout 1983 and 1984 from the notices of levy it served on the various debtors, and on October 2, 1984, the bank filed its administrative claim. Twenty-one days later, on October 23, the IRS denied the claim. In considering the bank's subsequent suit to recover the funds, we determined that the bank's action to recover funds received by the government from notices of levy prior to January 2, 1984, was time barred. *Id.* at 967. However, we made no mention of and did not challenge the IRS' authority to render its decision on the bank's administrative claim for money fully nine and one-half months after the applicable levy.

The IRS has by regulation construed § 6343 as allowing a reasonable period subsequent to the expiration of nine months for investigation of allegedly improper levies. 26 C.F.R. § 301.6343–1(b) (1992). As the Supreme Court recently reminded, courts must defer to the IRS' regulatory interpretations of the Internal Revenue Code so long as those interpretations are reasonable. *Cottage Savings Ass'n v. Commissioner*, — U.S. —, —, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991). In addition, Treasury regulations "long continued without substantial change, applying to unamended or substantially reenacted statutes are deemed to have received congressional approval and have the effect of law." *Id.* (quoting *United States v. Correll*, 389 U.S. 299, 305–06, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967)).

We conclude that Treasury regulation section 301.6343–1(b) is a reasonable interpretation of § 6343(b). The regulation sheds light on the question of the length of time available to the IRS to process administrative claims properly filed within nine months of a levy. By affording the IRS a reasonable period beyond nine months after a levy to investigate allegedly improper levies, the regulations allow a reasoned agency response to applications filed just within the nine-month limitation (as was the case here) and avoid a potentially unnecessary rush to litigation. Any other interpretation of the statute and regulations would demand that the IRS make expedient and possibly arbitrary decisions on "eleventh hour" claims to meet the nine-month requirement. Moreover, as a long-standing regulation which has not substantially changed, the Treasury regulation has the force of law, because Congress did not alter the regulation's approach when it amended the statute in 1979 by adding § 6343(c), which authorizes the payment of interest on returned property.

The Raymonds attempt to limit the import of the Treasury regulation by contending that the provision which allows the IRS a reasonable period to investigate claims is inapplicable to requests for the return of money. They find that the provision allows for extensions only where the return of specific property is in issue, because of the reference to "return of property" in the first part of the sentence in question. This contention is without merit. Not only does the sentence in question plainly refer to the return of money, but the use of the word

"property" in this instance also refers to money. If it were otherwise, subsection (2), which details the proper method for requesting a return of property, would need to be read as covering only those instances where claimants requested the return of specific property. Such a strained reading of subsection (2) of the regulation fails to recognize that subsection (2) provides the rules for what constitutes a proper request for any return of property, be it specific property or money.

AFFIRMED.